**Kazerouni Law Group, APC**
David J. McGlothlin, Esq. (SBN 026059)
david@kazlg.com
301 E. Bethany Home Road, Suite C-195
Phoenix, AZ 85012
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| **William Caldwell, individually and on behalf of all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**InstantAlign, Inc. d/b/a Hirey,**<br><br>Defendant. | **Case No.:**<br><br>**Complaint For Damages Pursuant To The Telephone Consumer Protection Act 47 U.S.C. §§ 227, Et Seq ("TCPA")**<br><br>**Jury Trial Demanded** |

1. Plaintiff William Caldwell ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint (the "Complaint") against InstantAlign, Inc. d/b/a Hirey ("Defendant"), and alleges, upon personal knowledge as to her own conduct, and upon information and belief as to the conduct of others, as follows:

## Introduction

2. Plaintiff brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal

**Complaint** 1

actions of Defendant, in negligently and/or willfully contacting Plaintiff on Plaintiff's telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA") and related regulations, thereby invading Plaintiff's privacy, specifically for claims under the National Do-Not-Call provision of 47 C.F.R. § 64.1200(c).

## Jurisdiction & Venue

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, a federal statute.

4. The Court has personal jurisdiction over Defendant because Defendant's principal place of business/headquarters is located in this District.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because (i) Defendant's principal place of business/headquarters is located in this District; (ii) Defendant is deemed to reside in the judicial district in which it maintains its principal place of business; and (iii) a substantial part of the events or omissions giving rise to these claims occurred within this District.

## Parties & Definitions

6. Plaintiff is an individual and citizen of Michigan.

7. Upon information and belief, Defendant is a domestic limited liability company with its principal place of business located at 1414 West Broadway Road Tempe, AZ 85282.

8. Whenever in this Complaint it is alleged that Defendant committed any

Complaint                                           2

act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## The TCPA

9. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy…." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

10. Specifically, the TCPA restricts telephone solicitations (i.e., telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems– principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

11. In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls.

Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminated this established business relationship exemption.

12. Therefore, all pre-recorded telemarketing calls to residential lines and all pre-recorded calls to wireless numbers violate the TCPA if the calling party does not first obtain express written consent[1] from the called party.

13. As of October 16, 2013, unless the recipient has given prior express written consent, the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

**Complaint**  4

voice or a recording.

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibit autodialed calls that engage two or more lines of a multi-line business.

- Prohibit unsolicited advertising faxes.

- Prohibit certain calls to members of the National Do Not Call Registry.

14. Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL

7062748 (N.D. Ill., Dec. 31, 2012).

16. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

16. With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id*. Thus, any second call placed to a wrong number violates the TCPA.

## Factual Allegations

17. At all times relevant to this Complaint, Plaintiff was assigned, and was the owner of, a cellular telephone number ending in - 1699 ("Cell Phone").

18. Plaintiff, *himself*, registered his Cell Phone with the National Do Not Call Registry in 2003.

**Complaint**                                               6

19. Plaintiff is the sole user and/or subscriber of his Cell Phone and is financially responsible for phone service to his Cell Phone.

20. Plaintiff's Cell is used for residential purposes.

21. In January 2024, Plaintiff entered into an agreement with Defendant for certain employment recruitment services.

22. Specifically, Plaintiff paid for a $249 Subscription that purportedly included, *inter alia*, 100 VIP chats per day: 100 VIP Search Chats per day."

23. Plaintiff, however, was deeply disappointed with Defendant's services.

24. As such, Plaintiff terminated his agreement with Defendant in the beginning of February 2024.

25. In response to Plaintiff's request to terminate his agreement with Defendant and close his account, Defendant sent a written response indicating: "I understand that you would like your account closed/deleted. Would you mind sharing with us your mobile number associated with your Hirey profile/account? It is required that you provide your mobile number associated with your profile/account in order for us to assist you with your account deletion request."

26. After adhering to Defendant's directives and deleting the app. from his phone, Defendant wrote: "Hi William, We are sorry that you've chosen to delete your Hirey account, and we respect your decision. **Please be informed that we have successfully deleted/closed your account.**" (emphasis in original).

27. Although the parties *had* an established business relationship at one point in time, the Plaintiff clearly terminated the relationship.

28. Moreover, Defendant acknowledged that the relationship had terminated.

29. Notwithstanding the foregoing, Defendant nevertheless began to incessantly contact Plaintiff on his Cell.

30. Over the next few months, Defendant continually called Plaintiff's Cell over and over again.

31. Specifically, in May 2024 and June 2024, Defendant called Plaintiff several times from the phone number (415) 795-2549.

32. Although Plaintiff was not interested in Defendant's services and cancelled his account, Defendant continued to call him to sell their services, which constitute telephone solicitations pursuant to 47 C.F.R. § 64.1200(c) as they were an attempt to promote or sell Defendant's services.

33. In response, Plaintiff asked Defendant to stop contacting him.

34. Indeed, Plaintiff repeatedly asked Defendant to stop contacting him during many calls unlawfully made to his Cell.

35. Yet, the Defendant failed to honor Plaintiff's request not to call in direct violation of the TCPA and DNC regulations.

36. In addition, Plaintiff sent text messages to Defendant asking "Why are your people still contacting me."

37. Defendant also texted Defendant's Client Relations Manager, Anne Suico, and pleaded with her writing "Ann this has got to stop."

38. Incredibly, Ms. Suico cavalierly responded "This too shall pass."

39. In addition to orally demanding that Defendant cease contacting him and transmitting text messages to Defendant, Plaintiff also mailed *two*, separate letters to Defendant's representatives.

40. In these two letters, Plaintiff wrote: "I am writing to demand that you cease all email communications with me immediately."

41. Then, Plaintiff emailed Ms. Suico as well as Defendant's representative Tiffiany Salabao and provided them with copies of his letters.

42. In response, Ms. Suico wrote: "I appreciate you letting me know about your concerns. Don't worry I'll make sure to forward your concern to the right department so that this will not happen again."

43. Unfortunately, it did happen again.

44. Despite Ms. Suico's assurances and Plaintiff's repeated requests, Defendant continued to contact Plaintiff leaving him with no choice but to retain an attorney and file this lawsuit.

45. Based on the foregoing, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including 47 C.F.R. § 64.1200(c).

46. Based on the foregoing, Defendant does not maintain a written policy, available upon demand, for maintaining a do-not-call list, as required by 47 C.F.R. § 64.1200(d)(1).

47. Based on the foregoing, Defendant does not train their employees or agents who are engaged in telemarketing on the existence and use of any do-not-call list, as required by 47 C.F.R § 64.1200(d)(2).

48. Defendant failed to place Plaintiff on the do-not-call list, despite his requests to not be contacted. Instead, Defendants continued to make unsolicited calls to Plaintiff's Cell, in violation of 47 C.F.R § 64.1200(d)(3).

49. By its actions, Defendants also violated 47 C.F.R § 64.1200(d)(6).

50. Plaintiff properly alleges injuries in fact, which are fairly traceable to Defendant's unlawful acts, and are likely to be redressed by a favorable judicial decision.

51. Among other harms caused by the unlawful telemarketing text messages at issue, receiving the unwanted telemarketing resembles the kind of harm associated with intrusion upon seclusion.

52. Plaintiff's Prayer for Relief herein includes a request for damages for Defendant's unlawful telephone solicitations, as authorized by statute. *See* 47 U.S.C. § 227(c)(5). These statutory damages were set by Congress and specifically redress the damages suffered by Plaintiff and members of the Class defined below.

**Class Action Allegations**

53. Plaintiff brings this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure individually and on behalf of the following two Classes, which are defined as follows:

<u>DNC Class</u>

All persons within the United States registered on the National Do-Not-Call Registry for at least 31 days, who received more than one telephone solicitation made by or on behalf of Defendant that promoted Defendant's products or services, within any twelve-month period, within the four years prior to the filing of the Complaint.

<u>Internal DNC Class</u>

All persons in the United States who, after notifying Defendant that they no longer wished to receive calls and/or texts from, or on behalf of, Defendant, received one or more calls and/or texts from or on behalf of Defendant from October 3, 2019 to the date that class notice is disseminated

54. Plaintiff reserves the right to modify the definition of the Class as warranted as facts are learned in further investigation and discovery.

55. Plaintiff and members of the Classes were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the members of the Classes via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiff and the members of the Classes whose cellular telephone numbers were on the National Do-Not-Call Registry.

Plaintiff and the members of the Classes were damaged thereby.

56. The exact size of the Classes is presently unknown but can be ascertained through a review of Defendant's records, and it is clear that individual joinder is impracticable. Defendant made telephone calls to thousands of consumers who fall into the definition of the Classes.

57. There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.

58. Common questions for the Classes include, without limitation:

   a. Whether, within the four years prior to the filing of this Complaint, Defendant or its agents placed more than one telephone solicitation to the members of the Classes whose telephone numbers were on the National Do-Not-Call Registry and who had neither an established business relationship nor personal relationship with Defendant;

   b. Whether Defendant's telephone solicitations were made via text message to cellular telephone numbers;

   c. Whether Defendant obtained prior express written consent to place telephone solicitations to Plaintiff or the Class members' telephones;

   d. Whether Plaintiff and the Class members were damaged

thereby, and the extent of damages for such violation; and

e. Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

59. Plaintiff's claims are typical of the claims of the other members of the Classes because Plaintiff received from Defendant or its agent at least one pre-recorded call for marketing purposes without prior express written consent. Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Classes.

60. Plaintiff will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions.

61. Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

62. This class action is appropriate for class certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class and making final injunctive relief appropriate with respect to the Class as a whole.

63. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law

applicable only to Plaintiff.

64. This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

65. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

66. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

67. Even if members of the Classes could sustain such individual litigation, a class action would still be preferable because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

68. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## Causes Of Action

### Count I
### Negligent And/Or Willful Violations Of The TCPA
### 47 U.S.C. §§ 227(c)(5)

69. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

70. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et seq.*, including implementing regulation 47 C.F.R. § 64.1200(c).

71. Plaintiff and members of the DNC Class whose numbers had been on the national-do-not call registry for at least 31 days received more than one marketing text message or phone call within a 12-month period, sent by or on behalf of Defendant, for the express purpose of marketing Defendant's goods and/or services without their written prior express consent.

72. Defendant's conduct invaded Plaintiff's privacy.

73. As a result of Defendant's violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

74. Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

75. At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

76. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227*, et seq.*, including implementing regulation 47 C.F.R. § 65.1200(c).

77. As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## Count II
### Knowing And/Or Willful Violations Of The TCPA
47 C.F.R. § 64.1200(d).

78. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

79. Plaintiff and members of the Internal DNC Class whose numbers had been on the national-do-not call registry for at least 31 days received more than one marketing text message or phone call within a 12-month period, sent by or on behalf of Defendant, for the express purpose of marketing Defendant's goods and/or services without their written prior express consent.

80. At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

81. Defendant sent unsolicited and unauthorized text messages and/or phone calls to the cellular telephones of Plaintiff and the Class members, cellular telephone numbers which had previously been placed on Defendant's Internal Do-Not-Call list, for the purpose of marketing goods and/or services to Plaintiff and the Class.

82. Defendant knew that it did not have prior express written consent to send these text messages and/or phone calls, and knew or should have known that

n
n

it was sending text messages or phone calls to cellular numbers placed on their Internal Do-Not-Call List in violation of the TCPA.

83. Defendant willfully or knowingly allowed text messages and/or phone calls to be sent to Plaintiff's and Class members' cellular telephone numbers on Defendant's Internal Do-Not Call List. For instance, Defendant could have determined from a review of its own business records that it could not contact Plaintiff and/or Class members, yet disregarded such information and placed illegal and unwanted solicitation text messages.

84. Defendant's text messages and phone calls caused Plaintiff and members of the Internal DNC Class actual harms including, but not limited to, invasion of their personal privacy, aggravation, inconvenience, nuisance and disruption in their daily lives, reduction in cellular telephone battery life, data, and loss of use of their cellular telephones.

85. Because Defendant knew or should have known that Plaintiff's and Class Members' cellular telephone numbers were on Defendant's Internal Do-Not Call List, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to the TCPA. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d)

86. As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every willful or knowing violation, pursuant to 47 U.S.C. § 227(c)(5)(C) or in the

alternative an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

87. Plaintiff and the Class are also entitled to and seek injunctive relief, pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting such conduct in the future.

88. Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff and the Class.

**Prayer For Relief**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully request the following relief:

- An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as Class Counsel;

- On the First Count, an award of actual or statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B) and injunctive relief prohibiting Defendant's conduct complained of herein, pursuant to 47 U.S.C. § 227(b)(3)(A), and an award trebling the actual or statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

- On the Second Count, an award of actual or statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B) and injunctive relief prohibiting Defendant's

conduct complained of herein, pursuant to 47 U.S.C. § 227(b)(3)(A), an award trebling the actual or statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

- Costs of suit;
- Reasonable attorneys' fees pursuant to, inter alia, the common fund doctrine;
- Pre-judgment and post-judgment interest on monetary relief; and
- All other and further relief as the Court deems necessary, just, and proper.

## Demand For Jury Trial

89.   Pursuant to the Seventh Amendment of the Constitution of the United States of America, Plaintiff demands a trial by jury of any and all triable issues.

Dated: October 17, 2024                    Respectfully submitted,

                                           By: /s/ David J. McGlothlin
                                               David J. McGlothlin, Esq.
                                               Attorney for Plaintiff

**Complaint**                             19